### TEXAS–NEW MEXICO PIPE LINE COMPANY
### v.
### The UNITED STATES.
### TEXACO–CITIES SERVICE PIPE LINE COMPANY
### v.
### The UNITED STATES.
### Nos. 51–63, 345–64, 52–63 and 374–64.

United States Court of Claims.
Oct. 18, 1968.

---

LINS, SKELTON, and NICHOLS, Judges.

## OPINION

**PER CURIAM:**

These cases were referred to Trial Commissioner George Willi with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The Commissioner has done so in an opinion and report filed on April 29, 1968. On May 28, 1968 defendant filed a notice of intention to except to the Commissioner's findings of fact and recommended conclusion of law. On August 12, 1968 defendant filed a notice of withdrawal of the notice to take such exceptions. On August 20, 1968 plaintiffs filed a motion requesting the court to adopt the Commissioner's recommended opinion, findings, and conclusions of law. Since the court agrees with the Commissioner's opinion, findings, and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in these cases without oral argument. Plaintiffs are, therefore, entitled to recover and judgment is entered for plaintiffs with the amounts of recovery to be determined pursuant to Rule 47(c).

## OPINION OF COMMISSIONER

**WILLI, Commissioner:**

Plaintiffs are both Delaware corporations who operate as interstate carriers of petroleum and petroleum products by pipeline.

The issue presented in these cases is the same as that decided today in Badger Pipe Line Co. v. United States, 401 F.2d 799, with which these cases were consolidated for trial under Rule 47(a). Although many of the particular facts involved in these cases, detailed in the findings accompanying this opinion, differ from those presented in *Badger*, their net effect is the same and so, therefore, is the decision rendered herein. Accordingly, for the reasons stated in *Badger*, these plaintiffs are entitled to

George E. McMurray, Jr., Washington, D. C., attorney of record, for plaintiffs; James F. Birmingham, New York City, of counsel.

Donald T. Fish, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant; Philip R. Miller and Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

depreciate their capitalized easement acquisition costs in the same manner as the line pipe to which those easements relate.

Whereas Badger was engaged solely in the trunkline transportation of refined products, Texas-New Mexico transported only crude oil, both in gathering lines and trunklines. The bulk of Texaco-Cities Service's business was the trunkline transportation of crude, with only the small remaining balance involving the trunkline movement of refined products. It had no gathering lines.

On brief, the Government concedes the depreciability of New Mexico's gathering line easement costs on the basis of the limited production life of the oil deposits from which they draw. It may be noted that the Internal Revenue Service's Bulletin "F" recognizes a shorter useful life for pipe used in a gathering line than for pipe in a trunkline, i. e., 25 v. 40 years. See Badger, supra, n. 3.

As to the trunklines that comprise the remainder of both plaintiffs' systems, the Government's position is the same as that advanced in Badger; that the capitalized costs of the related easements constitute intangible assets that may not be depreciated because their useful life is indeterminate. As in Badger, the Government urges that the indefiniteness of easement useful life results from the plaintiffs' rights thereunder to (1) replace the pipe that is initially installed; and (2) in some instances, to lay an additional line in the right-of-way upon payment of the same roddage fee as specified for the original line.

The evidence in these cases shows, as it did in Badger, that these rights are more theoretical than real. Specifically, it is no more economically feasible for these plaintiffs, than for Badger, to effect pipe replacement for other than localized repair purposes. The right to repair a line by pipe replacement does not render the useful life of the associated easements any more indeterminate than it does the life of the line pipe itself. It has never been suggested that the right of replacement defeats the tax privilege of depreciating the tangible components of the line. The unavoidable consequence of extended service interruption makes wholesale pipe replacement to increase system capacity economically prohibitive.

As to the residual value of such additional line rights as are involved in these cases, the record shows that as a matter of policy, plaintiffs did not enforce the roddage fee provisions of such rights so as to secure any discernible savings in the construction of a new line. Consequently, the existence of such previously acquired rights did not have a governing influence on the routing of additional line construction. As held in Badger, the potential benefit of avoiding condemnation proceedings in the acquisition of a portion of the rights-of-way that might be utilized in the future for additional line construction, is simply not enough to upset the generally evident conclusion that the income-producing value to the plaintiffs of the easements that they purchased is tied directly to that of the installed pipe for which they were acquired.

The requirements of the statute and regulations controlling plaintiffs' easement depreciation rights are not so stringent that such rights are denied unless it can be shown that at a specified time every vestige of value, real and hypothetical, will be gone.

■ To sustain the right to depreciate, the taxpayer's burden in forecasting useful life is no greater where the asset in question is intangible rather than tangible. In either event, if a realistic assessment of the present and foreseeable facts relevant to a projection of the asset's productive useful life points to a discernible terminal date of its income-producing value to its owner, its cost may be deducted for tax purposes over that period. Moreover, to depreciate the intangibles here involved, it is not necessary for the taxpayer to establish a specifically limited useful life for those assets standing alone. Rev.Rule 65–264, 1965–2 Cum.Bull. 53, provides that the useful-life burden has been met

if the taxpayer can show that, whatever it may be in terms of years, the economic life of the intangible easement is directly related to that of a tangible asset such as the associated pipeline. The evidence in these cases clearly establishes the requisite correlation. That correlation, the evidence shows, is not significantly disturbed by the pipe replacement and second line right features of the easements. Accordingly, any subsisting claim that easement life is indeterminate necessarily amounts to an attack on the generally accepted useful-life attributes of the pipeline itself. That issue has not been raised in these cases.

It is held that on the facts here involved, the useful life of plaintiffs' easements is the same as that of the installed pipe for which they were acquired, with the cost thereof to be depreciated at the same rate as has been applied by the parties in the case of the related pipe.